47 F.3d 1183
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Robert K. WOLTHUIS, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 94-3596.
 United States Court of Appeals, Federal Circuit.
 Jan. 19, 1995.
 
 64 M.S.P.R. 222.
 VACATED AND REMANDED.
 Before PLAGER, LOURIE, and SCHALL, Circuit Judges.
 PLAGER, Circuit Judge.
 
 
 1
 Robert K. Wolthuis, Ph.D appeals pro se the decision of the Merit Systems Protection Board (Board),[1] sustaining the Office of Personnel Management's (OPM) reconsideration decision. In its decision, OPM denied Dr. Wolthuis' request for an increased payment of the lump-sum benefit portion of his alternative form of annuity under the Civil Service Retirement System (CSRS). We conclude that, although Dr. Wolthuis is not entitled to all he asks, he is entitled to more than OPM offers; we vacate the decision of the Board which affirmed OPM, and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 Dr. Wolthuis was involuntarily terminated, effective on February 5, 1993, from his Senior Executive Service (SES) position as Deputy Assistant Secretary of Defense.[2] He had over 29 years of service in various positions within the executive and legislative branches. In response to Dr. Wolthuis' application for retirement benefits, OPM advised Dr. Wolthuis that, since he had been involuntarily separated as a "noncareer appointee in the Senior Executive Service," the statute made him ineligible to elect the alternative form of annuity (i.e., one with a lump-sum benefit in addition to the monthly annuity) provided in 5 U.S.C. Sec. 8343a. See 5 U.S.C. Sec. 8343a(f)(2)(A)(v) (Supp. II 1990). Accordingly, effective February 6, 1993, Dr. Wolthuis began receiving an annuity, without any lump-sum benefit, in the amount of $4,880[3] per month.
 
 
 3
 Not long after, Dr. Wolthuis accepted a legislative branch position on the staff of Senator Robert F. Bennett. The appointment was effective June 16, 1993. Since he was once again in the employ of the government, his annuity payments, which totalled $21,181 between February 6, 1993 and June 15, 1993, were discontinued by operation of law. 5 U.S.C. Sec. 8344(b) (1988). On July 15, 1993, Dr. Wolthuis was involuntarily terminated from this new position, but since this position was not one of those statutorily excepted from entitlement to the alternative annuity, he was now eligible for, and elected to receive, a retirement annuity including the lump-sum benefit.
 
 
 4
 The relevant OPM office determined that Dr. Wolthuis was entitled to a lump-sum benefit of $76,773; this amount represented Dr. Wolthuis' computed lump-sum credit of $97,954, see 5 U.S.C. 8331(8) (1988), reduced by the $21,181 that Dr. Wolthuis had received as annuity payments between February 6, 1993 and June 15, 1993. Dr. Wolthuis challenged this calculation, arguing that he was entitled to the full $97,954 as a lump-sum benefit portion. He requested further review by OPM.
 
 
 5
 In its initial decision dated October 21, 1993, OPM responded:
 
 
 6
 You stated that you believed you were entitled the entire amount of your contributions ($97,954.16), so we forwarded your claim to our retirement policy office for a review of our application of the law in arriving at the amount of AA lump sum payment. We have now received their decision, and they also conclude that your lump sum credit, as of the date of your separation from employment with the United States Senate was correctly determined as $76,772.83. Therefore, we must deny your request for payment of the $21,181.33 you received during your previous retirement as part of the AA lump sum payment.
 
 
 7
 The basis for the determination by the policy office is not specifically explicit in law and derives primarily from OPM's ability to regulate and legislative intent.
 
 
 8
 On December 17, 1993, OPM in its requested reconsideration decision affirmed its initial decision.[4]
 
 
 9
 Dr. Wolthuis then appealed to the Board. In an initial decision dated April 21, 1994, the AJ sustained OPM's reconsideration decision. The AJ agreed with OPM that the statutes did not address the question raised by Dr. Wolthuis' case:
 
 
 10
 [H]is ability to retire twice, and become eligible for an alternative form of annuity with lump-sum benefit upon his second retirement, although he was unable to do so upon his first, was not a circumstance anticipated by Congress.
 
 
 11
 The AJ sought the answer by examining Congress' treatment of situations thought to be analogous--the case of an annuitant who is reemployed and who consents to having additional retirement fund deductions made during the period of reemployment; and the case of a beneficiary of a deceased annuitant. The AJ explained:
 
 
 12
 Congress has expressly provided that where a reemployed annuitant consents to the withholding of fund deductions from his pay during the reemployment period, "his lump-sum credit may not be reduced by annuity paid during that [re]employment." 5 U.S.C. Sec. 8344(a)(4)(B). OPM argues, and I agree, that the only reason for this statutory prohibition against such a reduction, is a recognition by Congress that an annuitant's lump-sum credit ordinarily is reduced by the amount of his annuity payments.
 
 
 13
 Additionally, with regard to payment of lump-sum benefits to a designated beneficiary, based upon the termination of annuity rights following an annuitant's death, OPM may pay only the balance of the original lump-sum credit, minus the total annuity paid to the annuitant before his death. 5 U.S.C. Sec. 8342(e).
 
 
 14
 Accordingly, the AJ concluded that OPM must similarly reduce Dr. Wolthuis' lump-sum credit by the $21,181 in annuity payments made to him between February 6, 1993 and June 15, 1993, and therefore denied his petition for an increased lump-sum benefit portion. As noted, this decision became final on August 4, 1994 when the Board denied Dr. Wolthuis' petition for review. This appeal followed.
 
 DISCUSSION
 
 15
 On appeal, our task is to determine whether the Board's decision is:
 
 
 16
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 17
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 18
 (3) unsupported by substantial evidence.
 
 
 19
 5 U.S.C. Sec. 7703(c) (1988); see Cheeseman v. OPM, 791 F.2d 138 (Fed.Cir.1986), cert. denied, 479 U.S. 1037 (1987). Since neither fact nor procedure is at issue, the sole issue is whether the decision of the Board is in accordance with law.
 
 
 20
 Congress created the lump-sum payment option as an alternative annuity choice in 1986. As we shall see when we examine the particulars of Dr. Wolthuis' case, the financial benefits of the alternative form of annuity make it a particularly attractive option for certain annuitants, which makes it an unattractive option for the federal fisc. In 1990, Congress declared its intention to terminate this option effective October 1, 1995, see 5 U.S.C. Sec. 8343a(f)(3) (amended 1994); in 1993, Congress reinstated it as a continuing election but limited it to persons who have a life-threatening affliction or other critical medical condition. Act of Aug. 10, 1993, Pub.L. No. 103-66, tit. 11, Sec. 11002(a), 107 Stat. 409 (1994).
 
 
 21
 The original act, applicable to the case of Dr. Wolthuis, states:
 
 
 22
 Subject to subsection (c), the Office shall by regulation provide for such alternative forms of annuities as the Office considers appropriate, except that among the alternatives offered shall be--
 
 
 23
 (1) an alternative which provides for--
 
 
 24
 (A) payment of the lump-sum credit to the employee or Member; and
 
 
 25
 (B) payment of an annuity to the employee or Member for life.
 
 
 26
 5 U.S.C. Sec. 8343a(b)(1) (1988). The referenced section, 8343a(c), provides:
 
 
 27
 Each alternative provided for under subsection (b) shall, to the extent practicable, be designed such that the present value of the benefits provided under such alternative (including any lump-sum credit) is actuarially equivalent to the present value of the annuity which would otherwise be provided the employee or Member under this subchapter, as computed under subsections (a)-(i), (n), and (q) of section 8339 of this title.
 
 
 28
 "Lump-sum credit" is statutorily defined as the unrefunded amount consisting of retirement deductions made from the basic pay of an employee, amounts deposited by an employee covering earlier service, and interest on these deposited amounts. 5 U.S.C. Sec. 8331(8) (1988).
 
 
 29
 The parties agree that Dr. Wolthuis' lump-sum credit, if the $21,181 in total annuity payments he received between February 6, 1993 and June 15, 1993 is not taken into account, would be $97,954. Computation of the alternative form of annuity (as opposed to the annuity without lump-sum payment defined in 5 U.S.C. Sec. 8339) is provided in OPM's implementing regulation, 5 C.F.R. Sec. 831.2205(a) (1993), which states:
 
 
 30
 To compute the beginning rate of annuity payable to a retiree who elects an alternative form of annuity, OPM will first compute the monthly rate of annuity otherwise payable under subchapter III of chapter 83 of title 5, United States Code, including all reductions provided under the subchapter other than those in Sec. 8343a. That monthly rate is then reduced by an amount equal to the retiree's lump-sum credit divided by the present value factor for the retiree's attained age (in full years) at the time of retirement. The reduced monthly rate is then rounded to the next lowest dollar and becomes the rate of annuity payable.
 
 
 31
 As we previously noted, the question is, when computing the lump-sum portion to which Dr. Wolthuis is now entitled, how to treat the $21,181 that Dr. Wolthuis received between February 6, 1993 and June 15, 1993. OPM maintains that the entire amount should be deducted from his lump-sum portion. Dr. Wolthuis argues that no part of these payments should be deducted.
 
 
 32
 Since the answer to the question is not to be found in the express language of the statutes, nor has OPM addressed the question by rule or regulation, we must fashion an answer that is consistent with the statutory framework of the retirement program, and comports with common sense. The competing positions put forward by the government and by Dr. Wolthuis fail this test. The correct answer is found by examining the way in which the several annuity options are calculated under the statutes. Not surprisingly, this produces a dollar figure that falls somewhere between the extremes presented by the parties.
 
 
 33
 As noted above, 5 U.S.C. Sec. 8343a(c) requires the present value of the benefits provided under the alternative form of annuity (including lump-sum credit) to be actuarially equivalent to the annuity provided in Sec. 8339. 5 C.F.R. Sec. 831.2205(a) implements this mandate. Thus, the regular annuity under Sec. 8339 is actuarially equivalent to the alternative annuity--a lump-sum payment with a reduced annuity computed pursuant to 5 C.F.R. Sec. 831.2205(a).[5]
 
 
 34
 Under the alternative form of annuity, the annuitant gets an up-front return of his contributions to the fund. The remaining annuity--the reduced monthly payments to the annuitant, paid to the annuitant under the applicable formula--in effect reflects a fund 'contributed' by the government. When an annuitant takes a regular annuity, that is, one without any lump sum payout, the entire 'fund'--including both the annuitant's and the government's share--provides the source from which the actuarial value of the annuity is calculated. Thus, the difference between the two monthly annuity payments, spread out over the amount of actuarially expected years remaining in the annuitant's lifetime, represents an actuarial equivalent of the lump-sum payment.[6]
 
 
 35
 It follows that the annuity payments Dr. Wolthuis received between February 6, 1993 and June 15, 1993 were for calculation purposes funded from two sources--one part reflecting the contributions Dr. Wolthuis had made to the retirement system, and the other part representing the government's 'contribution.' Deducting the total amount of the payments from Dr. Wolthuis' lump-sum portion, as OPM argues, erroneously presumes that the $4,880 monthly payments represented an actuarial equivalent monthly payment based solely on Dr. Wolthuis's accrued lump-sum credit. If that were true, an annuitant electing the lump-sum alternative form of annuity would only be entitled to his lump-sum portion, and no continuing annuity. As stated earlier, however, the alternative form of annuity consists of the lump-sum portion and a reduced monthly annuity.
 
 
 36
 By the same token, Dr. Wolthuis' position, which is that no deduction whatever should be made in calculating the lump sum credit, would have the effect of overcompensating the annuitant. Implicit in Dr. Wolthuis' position is the erroneous assumption that the entire annuity was attributable to the government's contribution, and none represented a return of, or was based upon, the annuitant's contributions.
 
 
 37
 Dr. Wolthuis further argues in his brief that by subtracting any part of these payments from his lump-sum credit, OPM would be impermissibly treating him as eligible for the lump-sum option during a Congressionally-mandated period of ineligibility. We disagree. A portion of Dr. Wolthuis' annuity payments represented his contribution to the retirement fund. Therefore, giving him a lump-sum credit unreduced by any part of these annuity payments would result in double payment to Dr. Wolthuis. This would conflict with both the statutory framework and common sense.
 
 
 38
 OPM offers three arguments in support of its position. First, OPM, citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), maintains that its determination is entitled to deference if it was a reasonable interpretation of the existing statutory and regulatory scheme. Second, OPM, as did the AJ in his initial decision, analogized Dr. Wolthuis' situation to two situations covered by statute in which the lump-sum portion of the alternative form of annuity is computed. According to OPM, since these statutes require a dollar-for-dollar reduction of annuity payments from the lump-sum credit, this should also be done in Dr. Wolthuis' case. Finally, OPM argues that the full amount of the payments made must be deducted from Dr. Wolthuis' lump-sum portion because "by law, OPM cannot pay out contributions that have already been returned to the retiree in the form of annuity payments."
 
 
 39
 These arguments all lack merit. First, the deference accorded by courts to an agency's policy choice, commonly referred to as Chevron deference, arises when an agency, in the exercise of the policy-making authority delegated to it by statute, construes by general rule with future applicability its organic act. The organic act must be such as to have left the policy choice undecided by Congress. Typically such policy choices are announced through notice and comment rule-making, giving the public and affected interests opportunity to participate in the formulation of the policy. OPM concedes, and we agree, that no regulation or other form of pre-announced policy had been formulated to cover the issue in this case.
 
 
 40
 The record establishes that the position of the agency was decided upon by an office within OPM when this case was referred to it, and was made specifically in the context of this particular adjudication. The agency already has the advantage of having the burden of persuasion placed upon a petitioner seeking relief against the government;[7] it would be inappropriate for a court to add to that burden by according Chevron deference to what is essentially an agency's litigation position.
 
 
 41
 Likewise, we are unconvinced by the analogy to the treatment of lump-sum credit for beneficiaries of deceased annuitants in 5 U.S.C. Sec. 8342(e), or to the treatment of reemployed annuitants in 5 U.S.C. Sec. 8344(a)(4)(B). With regard to deceased annuitants, 5 U.S.C. Sec. 8342(e) provides that, if annuity rights based on service of a deceased employee terminate before the total annuity paid equals the lump-sum credit, then the beneficiary shall be paid the difference. The government's retirement program reflects a commitment to support government employees in their retirement. To this end, the government withholds a portion of an employee's salary during periods of service, with the expectation that the employee will get that money back, and more, upon retirement.
 
 
 42
 When an employee retires, then, there are two related but distinct aspects of the government's obligation--long term support and return of money paid into the fund. When a retired employee dies before he or she has received the equivalent in annuity payments of the money contributed to the fund, the government has met its obligation to support the retiree in retirement, but has not met the expectation that the employee will have a full return on the investment. In other words, money which presumably would have contributed to the employee's estate but for the fact that it was required to be withheld for retirement purposes, remains in the hands of the government. 5 U.S.C. Sec. 8342(e) only ensures that the estate is repaid what it is due. It does not speak, and therefore is not useful as an analogy, to the government's obligations to a current retiree--the issue involved in our case.
 
 
 43
 Regarding reemployed annuitants, Sec. 8344(a) makes provision for annuities and pay when an annuitant becomes reemployed in an appointive or elective position in the government. (An annuitant whose annuity, based on an involuntary separation, must be terminated pursuant to another subsection (Sec. 8344(b)) upon reemployment--the case of Dr. Wolthuis--is excepted from the coverage of this section.) The section provides various ways for an annuitant to be paid, and for the annuity to be adjusted accordingly, and notes that under one specific set of circumstances the lump sum credit "may not be reduced by annuity paid during that [re]employment." 5 U.S.C. Sec. 8344(a)(4)(B).
 
 
 44
 The government deduces from this provision, and the provision for deceased annuitants discussed above, the negative inference that all other reemployed annuitants must have their lump sum credit reduced dollar-for-dollar. This does not follow. First, the fact that special provisions for these two cases, which Congress obviously had brought to its attention, were made in this way tells us little about what Congress would do if it had before it the special case raised by the Wolthuis situation. Second, as we explained, the resolution of the deceased annuitant payout issue has no bearing on the issues raised in this case. And thirdly, even if it could be inferred from the special rule in the reemployment provision that the general rule must be to reduce lump-sum credits when an annuitant has received prior annuity payments, that does not tell us whether the reduction in every case is to be dollar-for-dollar, or whether some other accommodation is to be made.
 
 
 45
 We agree with the government that in a case such as Dr. Wolthuis', the lump-sum credit should be reduced by an appropriate amount reflecting the fact that there were prior annuity payments received by the annuitant. However, the appropriate reduction is not the entire amount received, as the government argues. The reduction should be in an amount equal to that part of the annuity payments previously received which are attributable actuarially to that part of the retirement 'fund' which is receivable as the lump-sum credit (unreduced by the payments).
 
 
 46
 Finally, our formula for calculating the appropriate lump-sum payment does not violate the prohibition against double payment to an employee of contributions to the retirement fund. Only a portion of the payments that were made represented repayment of or was based upon Dr. Wolthuis' lump-sum credit. A lump-sum credit in an amount that properly reflects the relevant contributions to the prior payments would not constitute a double payment.
 
 CONCLUSION
 
 47
 The decision of the Board is vacated, and the matter is remanded to the Board with instructions to order OPM to proceed in a manner consistent with this opinion.
 
 
 48
 VACATED AND REMANDED.
 
 
 
 [1]
 Dkt. No. DC0831940205I1. Pursuant to 5 C.F.R. Sec. 1201.113(b), the Administrative Judge's (AJ) initial decision dated April 21, 1994 became the final decision of the Board on August 4, 1994 when the Board denied Wolthuis's petition for review
 
 
 [2]
 His position was excepted from civil service protection, and thus he served at the pleasure of the appointing authority
 
 
 [3]
 For ease of discussion, all dollar amounts are rounded
 
 
 [4]
 We need not consider the rationale for OPM's reconsideration decision since the Board rejected it, and affirmed the OPM's reconsideration decision on different grounds. It is the Board's decision that is before us
 
 
 [5]
 For example, at the time of his second retirement, Dr. Wolthuis was offered an election between either (1) an annuity of $4,921 per month or (2) a lump-sum payment and an annuity of $4,579 per month. These two offers are deemed actuarial equivalents. (A reduction was made in the monthly annuity figures for a survivor benefit; since it applied to both figures it does not affect the analysis and is ignored.)
 
 
 [6]
 At the time of Dr. Wolthuis's second retirement, the difference between the two offered monthly payments ($4,921 minus $4,579 = $342), spread out over the number of remaining years that the annuitant is actuarially expected to live, should be equivalent to the proffered lump-sum payment
 
 
 [7]
 See 5 C.F.R. Sec. 1201.56(a)(2) (1994)